[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is an action by the plaintiff Martha K. McMillen and Malcolm E. McMillen against the defendant John Caughman for damages sustained as a result of an automobile accident.
The facts are as follows: In the afternoon of ApriL 16, 1986, the plaintiff Martha McMillen drove her 1984 two-door Cougar into the driveway of the house located at 115 Church Street in the town of Wethersfield. In the car were plaintiff's teenage daughter Tara and Tara's 12-year old friend Heather. Heather was being dropped off after having spent the afternoon with Tara and Mrs. McMillen.
When Mrs. McMillen drove into the driveway there was a parked car already there. She observed no occupant in that car. In order to let Heather out of the car, Mrs. McMillen reached across the passenger seat and pushed open the door on the passenger seat side. Heather proceeded to get out of the car. She was half way out of the car, that is, she had one foot on the driveway, when the defendant's car backed into the McMillen car. Heather was not thrown off balance nor caused to fall, her foot did not move from its position on the driveway. The open door moved gently toward her. Upon impact, Mrs. McMillen who had been turned toward the passenger side, watching Heather get out of the car, turned her head to the left to see what had hit her.
Both operators John Caughman and Martha McMillen exited their cars immediately. The defendant inquired if anyone was injured. No one claimed any injury. Both operators examined their cars. Mrs. McMillen's front bumper had a cut in the rubber portion of the bumper which was caused by the jagged edge of the hitch which was on the defendant's rear bumper.
The defendant who was an automotive repairman offered to repair the bumper himself. Mrs. McMillen told him she would think about it and get back to him. A few days later, Mrs. McMillen called the defendant and told him she wanted a new bumper whereupon the defendant directed her to his insurer CT Page 2711 because he felt the replacement was unwarranted ; that, at best, it was a $100 repair job.
After dropping off Heather, Mrs. McMillen with her daughter, Tara, went home. When she got home and went to relax Mrs. McMillen began experiencing pain in her neck and back. She called her family doctor, Dr. Friedberg who arranged to see her the next morning. The history given Dr. Friedberg by Mrs. McMillen was that her stopped car in a driveway was struck by another car backing up in the driveway, that she was at the time of the impact, twisted to watch the children leaving the back seat of the car, that she was still in her seat belt but was jolted by the impact of the accident.
Examination by Dr. Friedberg on April 17, 1986 showed motions of the head and neck slightly limited in all places with tenderness in the left suprascapular area. She was treated with Xanax and Valium as mild relaxants. Mrs. McMillen was seen again on April 14, 1986, April 19, 1986, April 24, 1986, April 27, 1986, April 29, 1986, June 2, 1986 and June 20, 1986. On June 2, 1986, physical examination showed that the motions of Mrs. McMillen's head and neck were all but unlimited although there was some pain on turning her head to the right. On June 20, 1986, Mrs. McMillen's only pain referable to the accident was pain in the left infrasperatus muscle on internal rotation and flexation of the muscle. When seen on June 26, 1986, Dr. Friedberg reported that although pain and tenderness persisted, it was mild and restricting exercises were only slightly painful.
In the early part of July of 1986, Mrs. McMillen went white water rafting in Colorado. At that time she struck her left side against a rock. On July 31, 1986 she was again seen by Dr. Friedberg at which time she was reported as still having some neck pain and now for the first time this pain is reported as "particularly on sleeping and turning to the left." Physical examination showed no gross limitation of the head and neck though Ms. McMillen complained to Dr. Friedberg of pain on turning when driving. At that time, Dr. Friedberg reported an impression that Mrs. McMillen had a sprain of the clavical musculatus and arranged for an orthopedic consultation with Dr. Haugh. Mrs. McMillen was seen on August 7, 1986 by Dr. Haugh's associate Dr. John O'Brien. Dr. O'Brien reported as to the history given him by Mrs. McMillen regarding the car accident of April 16, 1986 that "at the time of impact she was twisted around to the right side from the driver's seat facing towards the back of the car." Dr. O'Brien found that Mrs. McMillen had sustained a jarring and whiplash type injury to her neck and upper back and that since the automobile accident had had intermittent pain in the neck and upper back, mainly on the CT Page 2712 left side and centered at the posterior superior aspect of her left scapula. Dr. O'Brien also found that Mrs. McMillen had sustained a mild injury to her left wrist resulting in a flexor carpi ulnaris tendonitis which she exhibited at this office visit.
Examination by Dr. O'Brien on August 7, 1986 showed excellent range of motion to her clavical spine and upper back but with definite evidence of nerve root limitation in the left side of C6-7. Dr. O'Brien placed her on Medrol Dozepak for the next week along with a removable foam and velcro splint for her wrist.
Mrs. McMillen was again seen by Dr. O'Brien on September 4, 1986 at which time he found her wrist resolved with tendonitis no longer present. Her neck was also improved although she still had some mild symptoms. Mrs. McMillen no longer wanted another course of the Medrol Dozepak.
A follow-up visit took place with Dr. O'Brien on September 23, 1986 with Mrs. McMillen complaining she continued to have discomfort in her neck and left upper back which she feels when turning her neck to the left. Dr. O'Brien reports pain in the upper back of the superior medial border of the scapula but that otherwise she has full range of motion of her neck, no loss of strength in either upper extremity and normal neurological examination. Dr. O'Brien reports at this time that his impression is that of a clavical chronic musculoligamentous injury to the neck and upper back. He rates her as having "a 5% permanent partial disability of the upper back and neck" as a result of this injury.
Dr. Friedberg in his report of December 17, 1986 gives a chronological account of his treatment of Mrs. MacMillen beginning with the examination of April 17, 1986. He makes no mention of any sleep disorder except for noting on July 31, 1986 that "she still had some neck pain particularly on sleeping and turning to the left."
In a report by Dr. Robert Watson of the New Haven Sleep Disorders Center to Dr. Raymond Chagnon dated March 1, 1989, Dr. Watson refers to his sleep disorder evaluation of October 22, 1986 of Mrs. MacMillen as a result of a referral by Dr. Friedberg. Mrs. McMillen at the time was complaining of poor quality sleep and subsequent daytime fatigue. She was found to have what was termed by Dr. Watson as "alpha delta" sleep, which Dr. Watson reported has been found to be associated with the complaint of non-restorative sleep. Dr. Watson also noted that alpha delta sleep has also been associated with myofascial pain syndrome. CT Page 2713
Neither Dr. Friedberg nor Dr. O'Brien make mention of the myofascial pain syndrome in their reports as tying in with the April 16, 1986 car accident nor does Dr. Watson in referring to his October 22, 1986 evaluation refer to any history given to him as to the April 16, 1986 car accident or as to when Mrs. McMillen's sleeping complaints started.
Mrs. McMillen's daughter had been treating with Dr. Arnold for myofascial pain syndrome and Mrs. McMillen on her own in September of 1987 initiated a contact with Dr. Arnold who, because he could not see her for two months, referred her to Dr. Gagnon, who saw her on September 5, 1987.
Dr. Gagnon in his report of January 11, 1989 stated Mrs. McMillen was being treated by him for myofascial pain syndrome. He reported that "She was involved in a motor vehicle accident on April 17, 1986, which resulted in left-sided neck and thoracic pain exacerbating her myofascial pain syndrome with increased pain and muscle spasm requiring an intensive physical therapy program to treat." Dr. Gagnon makes no mention of the July 1986 injury to Mrs. McMillen's left wrist when while white water rafting in Colorado she struck her left arm and wrist against a rock.
Dr. Gagnon in a letter dated February 27, 1989 to Mrs. McMillen written at her request to explain her present condition to her insurance agent gives an explanation of the nature of myofascial pain syndrome. He writes:
 The nature of Myofascial Pain Syndrome is that it is a condition of muscles that predispose muscles so that upon injury there is not complete healing of the muscles thus setting up a chronic condition of shortening of the muscles, muscle spasms with areas of thickening in the muscles that is very painful to stretch and palpation. These areas are called trigger points and syndrome causes an aching type of pain in the muscles.
Dr. Gagnon termed Mrs. McMillen predisposed to developing this condition and stated in his letter to her that the environmental trigger for the pain was the motor vehicle accident of April 16, 1986, that that motor vehicle accident exacerbated the dormant or latent myofascial pain syndrome that she had. Dr. Gagnon had her undertake physical therapy. He saw CT Page 2714 Mrs. McMillen on three other occasions, an office visit on February 1, 1988, one on December 8, 1989 and the last on January 19, 1989.
A follow-up visit took place with Dr. O'Brien on February 27, 1989. Dr. O'Brien reported that since the automobile accident of April 16, 1986, Mrs. McMillen has had intermittent pain in her neck and upper back mainly on the left side and centered in the posterior superior aspect of the left scapula. This he reports has basically remained unchanged. He goes on to report that Mrs. McMillen does have some occasional discomfort down her left arm as far as the hand. Dr. O'Brien increases her impairment to 10% of the neck since, he reports, this is the cause of her pain in the upper back and also the left arm.
Two doctors who were not treating physicians were called in to testify as experts. Dr. Arnold called by the plaintiff gave his opinion of Mrs. McMillen's injury based on his examination of her on March 6, 1989, the history given him by her as to the April 16, 1986 car accident and her course of care from that date. Dr. Arnold over the years has treated Mrs. McMillen's daughter for myofascial pain syndrome. Mrs. McMillen's complaints in 1989 were fatigue and sleep upset, and intermittent pain in her neck and upper back on the left side and occasional discomfort down her left arm as far as her hand.
Dr. Arnold's understanding of how Mrs. McMillen's body was positioned at the time of impact was that, with her seat belt on, Mrs. McMillen had turned the upper part of her body to the right to let her young passenger out and had her neck turned to the left looking forward, when her car was hit. This unnatural position of her neck would according to Dr. Arnold, result in an injury even from a slight impact because of the way her body and neck were positioned. In the history provided Dr. Arnold by Mrs. McMillen no mention was made of the rafting injury suffered by her shortly after the April 16, 1984 incident. When told about it at the trial and then asked how he would view this kind of impact, he responded that in the rafting accident the body would have been braced to receive the blow, would have been expecting it. When asked if Mrs. McMillen's body position in the car had been different than that as described to him, his response was that he had come to his conclusion based on the information given him by Mrs. McMillen as to how she was positioned in the car at the moment of impact.
Dr. Curtis, called by the defendant, had examined Mrs. McMillen on February 27, 1989. The history given to Dr. Curtis was that Mrs. McMillen was turned toward the back seat, CT Page 2715 that she was thrown about, and that following the accident she experienced pain on the left side of her neck. He found the upper pain in her left shoulder and the left side of her neck to be consistent with soft tissue injury. Dr. Curtis found no permanent loss of function and gave as her prognosis that her condition would improve and that she would be left with no impairment. According to Dr. Curtis the expression of myofascial pain syndrome is used interchangeably with soft tissue pain. Dr. Curtis found no evidence of fibromyalgia.
On the issue of liability this court concludes that the defendant was negligent in that he started to back up his car before looking to see if there was anything behind him. As to what damages were sustained as a result of this negligence this court concludes that the August 16, 1986 accident was not the trigger which exacerbated Mrs. McMillen's latent myofascial pain syndrome.
This court discounts the opinions of Dr. Gagnon and Dr. Arnold both of whom termed the April 16, 1989 car accident as the trigger which exacerbated Mrs. McMillen's dormant or latent myofascial pain syndrome. Dr. Arnold took it one step further and opined that the myofascial pain syndrome progressed and became fibromyalgia. Neither Dr. Gagnon nor Dr. Arnold had been told by Mrs. McMillen of the white water rafting incident. Dr. Gagnon in the history noted by him in his report merely refers to the motor vehicle accident as having resulted in left-sided neck and thoracic pain. Dr. Arnold was specifically told by Mrs. McMillen that her neck was twisted to the left so that she was facing the front windshield while her body was twisted to the right when she was hit. This statement is contrary to that given by Mrs. McMillen to Dr. Friedberg and Dr. O'Brien as to how she was positioned on impact. The history given by Mrs. McMillen to Dr. Friedberg and Dr. O'Brien shortly after the accident was that when the defendant's car backed into her she was twisted to the right looking toward the back of the car as she let her young passenger out.
Dr. Arnold testified that his conclusion regarding the car accident as the trigger was based on how he understood Mrs. McMillen to have been positioned in the car when her car was hit. According to Dr. Arnold, the position, as she had described it to him, would have been an unnatural body position, so that even a slight impact would have been enough to cause harm.
We would expect Mrs. McMillen's account of the accident given Dr. Friedberg and Dr. O'Brien to be more accurate, being closer in time. CT Page 2716
Of all the physicians involved with Mrs. McMillen, Dr. Friedberg is the one who has the full picture of Mrs. McMillen's situation. She sees him the day after the car accident and gives him a full account of how it happened. Dr. Friedberg is the first to know about the white water rafting accident and refers her for treatment of the injured wrist. Dr. Friedberg knows about Mrs. McMillen's fatigue complaints. When he releases her from his care some seven months later Dr. Friedberg summarizes in his report that Mrs. McMillen received a "characteristic whiplash injury"; that she had the usual protracted course with persistence of mild to moderately painful symptoms; that although her improvement was significant she was never free of discomfort. Dr. Friedberg did not attribute the fatigue Mrs. McMillen had been complaining about to the car accident. In fact his summary report of December 17, 1986, makes no mention of his referral relative to her sleep complaints.
Medical expenses attributable to the course of treatment prescribed by Dr. Friedberg and Dr. O'Brien are as follows: Dr. Friedberg's bill, $315.00; Great Meadow X-ray, $165.00; University Physicians, $85.00; and Dr. O'Brien's bill, $305.00. This court having found that the April 16, 1986 accident was not the trigger which exacerbated Mrs. McMillen's latent myofascial pain syndrome and the pain and fatigue associated with that condition, disallows those expenses for medical care, physical therapy and exercise regimes, incurred for that condition.
Mrs. McMillen is a practicing attorney who during the time that she was raising a family, worked part-time and was politically active in the town in which she and her family lived. She was a member of the Town Council from 1983 to 1987 when she resigned before her time had expired. In December of 1986 she began sharing space with a law firm and under the arrangement worked out did the firm's title searches. Prior to that she had worked out of her home. Her earnings in 1984 were $14,000; in 1985, $20,000; in 1986, $14,300; in 1987, $54,800; in 1988, $32,700; and in 1989, $33,000. As a sole practitioner, she does not do trial work, referring out any matters which do not get disposed of short of a trial. One of Mrs. McMillen's damage claims is that her law practice was and continues to be compromised by the injuries suffered as a result of the car accident of April 16, 1986. We disagree and find no loss of earnings attributable to the April 16, 1986 accident.
This court further finds the loss of consortium claim of the plaintiff Malcolm McMillen is not proven to have been caused by any condition resulting from the April 16, 1986 CT Page 2717 accident.
Judgment may enter on count one in favor of the plaintiff Martha McMillen against the defendant John Caughman in the amount of $35,000.
Judgment may enter on count two in favor of the defendant John Caughman.
HENNESSEY, J.